LESS FLYNN

*v.*

STATE COMPENSATION COMMISSIONER AND
NATIONAL STEEPLEJACK COMPANY

(No. 10771)

Submitted January 11, 1956.  Decided February 7, 1956.

*Chester Lovett, Arthur T. Ciccarello,* for appellant.

*Franklin W. Kern,* for State Compensation Commissioner, appellee.

*Harold W. Calhoun,* for National Steeplejack Company, appellee.

HAYMOND, JUDGE:

The claimant Less Flynn sustained personal injuries when he fell from a structure on which he was working on October 18, 1953.  He filed his claim for compensation on November 5, 1953, and on November 23, 1953, the

State Compensation Commissioner awarded him total temporary disability benefits of $25.00 per week. After a hearing, the commissioner, by final order entered May 9, 1955, held the claim to be not compensable on the ground that the claimant, at the time of his injury, was not an employee within the meaning of Section 1, Article 2, Chapter 23, Code, 1931, as amended. By order entered August 15, 1955, the Workmen's Compensation Appeal Board affirmed the order of the commissioner and from the order of the board this Court granted this appeal on September 26, 1955 upon the application of the claimant.

In May 1950 the claimant and Hershel Sublette entered into a written agreement and, as partners, under the name of National Steeplejack Company, engaged in the business of painting and servicing external surfaces of buildings and other structures. This partnership continued until the fall of that year when it was dissolved by the withdrawal of Sublette and the claimant became the owner of the assets of the partnership and operated its business until July 10, 1953. During his ownership and operation of the business the claimant failed to earn a satisfactory profit and on July 10, 1953 his wife, Nancy Flynn, who claims to be its owner since that date, purchased the business from him for the sum of $1,000.00 which she paid to him in cash.

On July 24, 1953, after the sale of the business to Nancy Flynn, an application to become a subscriber to the Workmen's Compensation Fund upon a form designed for use by a corporation was filed in the name of the National Steeplejack Company.

Less Flynn, who is uneducated and unable to read or write except to sign his name, signed the application as president of the National Steeplejack Company. Since this application was filed Nancy Flynn, under her claim to ownership of the business, has paid the premiums to the Workmen's Compensation Fund for the National Steeplejack Company as a subscriber to the fund. The

State Compensation Commissioner in some undisclosed manner learned that the National Steeplejack Company was not a corporation and on July 21, 1954, a new application was filed with the commissioner.

On August 2, 1954, the claimant and his wife submitted separate affidavits which together stated that in May, 1953, the claimant and his partner sold all the assets of the National Steeplejack Company to Nancy Flynn for the sum of $1,000.00 which was paid to them by her; that the claimant did not retain any ownership in its business after that date; that Nancy Flynn, since that date, was the sole owner of all its assets, including equipment and vehicles, carried its bank account in her name, kept its books, and paid all the expenses and wages, including the wages paid to the claimant; that she paid all assessments to the Workmen's Compensation Fund; that the claimant, since May 1953, has not been the owner of any interest in the National Steeplejack Company; that since that date he worked only as its employee; that in filing the application in July 1953, the claimant acted at the direction of his wife and as her agent; and that the claimant, being unable to read the application which was completed for him by a person at the office of the commissioner did not know that he had misstated any facts and did not intend to sign any misstatement concerning the National Steeplejack Company. After consideration of the foregoing applications and affidavits, the commissioner, on August 11, 1954, ordered that the claim be set for hearing to determine whether the claimant was an employee within the meaning of the workmen's compensation statute. At the hearing which, after a continuance on September 24, 1954, was held by a trial examiner on November 5, 1954, the claimant and his wife appeared and testified as witnesses. No other testimony was introduced in connection with the claim.

Notwithstanding the relationship of husband and wife between the claimant and Nancy Flynn, the misstate-

ments of the time and the manner of the purchase of the assets of the National Steeplejack Company by Nancy Flynn in May 1953 from the claimant and Hershel Sublette, and the statements in the application filed and signed by the claimant on July 24, 1953, the evidence given by the claimant and his wife, which was not contradicted by any direct testimony, sufficiently shows that prior to July 10, 1953, Sublette withdrew from the partnership which formerly existed between him and the claimant; that the claimant then became the owner of the assets of the partnership; that, as both the claimant and his wife believed that the claimant was incapable of managing the business successfully, his wife on July 10, 1953, purchased all the assets, including equipment and vehicles, for which she paid the claimant the sum of $1,000.00 in cash from funds owned by her; that by the purchase she became the sole owner of the assets of the National Steeplejack Company and as such managed and directed its business transactions after that date; that she financed its operations, kept its books, placed its bank account in her name, signed all checks, and approved and supervised its contracts with other persons for the performance of work and services, including the contract signed by the claimant in behalf of the National Steeplejack Company with The Pure Oil Company which was accepted and approved by her for work performed at its Cabin Creek plant where the claimant was injured; that she purchased, on August 17, 1953, from an automobile dealer upon a written order and paid the sum of $440.00 for a truck which was used in the business; that she visited, inspected and supervised the work performed under the contracts made and entered into by the National Steeplejack Company; that she paid all premiums due from it to the Workmen's Compensation Fund; that she hired the claimant and another person as employees; and that she paid the claimant, at the rate of $1.25 per hour, for his services as an employee in cash and by checks, signed by her, several of which were introduced in evidence with her testimony.

The trial examiner recommended that the claim be rejected on the ground that the claimant was not an employee within the meaning of the workmen's compensation statute.

By final order, entered May 9, 1955, the commissioner set aside and annulled his order of November 23, 1953, affirmed his order of August 11, 1954, and rejected the claim as not compensable on the ground that the claimant was not an employee within the meaning of the statute.

Upon appeal by the claimant to the Workmen's Compensation Appeal Board, the board by order entered August 15, 1955, affirmed the final order of the commissioner and rendered this opinion:

"Claimant fell from a gasoline storage tank fracturing his spine and pelvis and when first reported the Commissioner apparently concluded National Steeplejack Company was a corporation and claimant a regular employee. The claim was therefore declared compensable but it soon appeared that National Steeplejack Company was the trade name for the claimant himself, or for his wife, or for a partnership in which either he or his wife or both were interested. Testimony concerning claimant's employment status was heard by one of the Commissioner's Trial Examiner and the Commissioner subsequently vacated his finding of compensability and claimant appealed.

"Review of the evidence raises doubt concerning whether or not claimant was a regular employee of his wife at the time of the accident and within coverage of the Act. The evidence was mainly that of the interested parties themselves and when outlined on paper it would appear that claimant had made a prima facia case bringing himself under the Act. This type of case however requires evaluation by an impartial authority on the ground who heard the witnesses in person. Apparently the Trial Examiner recommended against the claimant

and his prima facia case. Since the Trial Examiner had an opportunity to hear the parties and judge of the evidence from the most advantageous standpoint this Board is disposed to rely upon his recommendations."

Section 1, Article 2, Chapter 23, Code, 1931, as amended, relating to employers and employees covered by the statute provides " * * * nor shall a member of a firm of employers, or any official of an association or of a corporation employer, including managers, or any elective or appointive official of the State, county, county court, board of education, municipality or other political subdivision of the State, whose term of office is definitely fixed by law, be deemed an employee within the meaning of this chapter: * * *."

It clearly appears from the evidence that the National Steeplejack Company never acquired the legal status of a corporation and that it was merely a trade name used by the owners of the business in its operation. It is also manifest that the partnership operated by that name which formerly existed between the claimant and Hershel Sublette as a general partnership at the will of the parties was dissolved by the voluntary withdrawal in good faith of Sublette as a member in the fall of 1950. A general partnership at will is dissolved by the withdrawal in good faith by any partner whenever he desires to withdraw from the partnership. 14 Michie's Jurisprudence, Partnership, Section 42; 40 Am. Jur., Partnership, Sections 236, 242, 244; 68 C. J. S., Partnership, Sections 346, 347; *McMahon* v. *McClernan*, 10 W. Va. 419. There is no showing of any action to the contrary upon the part of Sublette and, of course, any question involving the mutual rights and duties of the claimant and Sublette arising from the partnership could not be considered in this proceeding. It is also sufficiently established that no partnership existed at any time between the claimant and his wife in the ownership or the operation of the business; that the claimant was its owner from the time of the dissolution of the partnership be-

tween him and Sublette until he sold it to his wife in July, 1953; and that, at that time, by her purchase of the business and its assets, including its equipment, from the claimant, she became and has continued to be its sole owner and has operated, conducted and controlled it as its owner.

Though some minor discrepancies appear in statements in the affidavits of the claimant and his wife as to the exact time she purchased the business and the owners to whom she paid the purchase money and in the application signed and filed by the claimant on July 24, 1953, concerning the legal status and ownership of the National Steeplejack Company, the otherwise undisputed testimony of the claimant and his wife shows that at the time the claimant was injured on October 18, 1953, he was an employee of his wife in the business which she then owned and operated. The only doubt concerning his status at that time, which evidently influenced the action of the trial examiner, the commissioner, and the board in the disposition of this claim, arises from the existing relationship of husband and wife between the claimant and his spouse. That relationship alone, however, does not operate to prevent or prohibit one spouse, who owns a business, from employing the other spouse to work or render service in connection with the operation of such business. A wife who owns and operates a business which is subject to the provisions of the workmen's compensation statute may establish the relationship of employer and employee between her and her husband; and, upon compliance with the other requirements of the statute, a husband who is an employee of his wife in such business is entitled to compensation from the workmen's compensation fund for personal injuries received by him in the course of and resulting from such employment.

The finding of the Workmen's Compensation Appeal Board that the claimant was not an employee within the meaning of the workmen's compensation statute, Section

1, Article 2, Chapter 23, Code, 1931, as amended, is contrary to and is not supported by the evidence. For that reason the finding of the board and its order of August 15, 1955, which affirmed the order of the commissioner of May 9, 1955, rejecting the instant claim on the ground that the claimant when injured was not an employee under the provisions of the statute, are plainly wrong. A finding of the Workmen's Compensation Appeal Board which, upon the proof taken before the commissioner and acted upon by the board, is plainly wrong, will be set aside by this Court. *Walk* v. *State Compensation Commissioner and Hutchinson Coal Company,* 134 W. Va. 223, 58 S. E. 2d 791; *Miller* v. *State Compensation Commissioner and McCoy Brothers,* 130 W. Va. 771, 45 S. E. 2d 249; *Rasmus* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 55, 184 S. E. 250. And an order of the Workmen's Compensation Appeal Board, affirming an order of the State Compensation Commissioner, which is not supported by the evidence and, for that reason, is plainly wrong, will be reversed and set aside by this Court. *Walk* v. *State Compensation Commissioner and Hutchinson Coal Company,* 134 W. Va. 223, 58 S. E. 2d 791.

The order of the appeal board entered August 15, 1955, and the order of the commissioner entered May 9, 1955, which rejected the claim as not compensable, are reversed and set aside and this proceeding is remanded to the commissioner with directions that he determine and award the claimant compensation to which he is entitled under the workmen's compensation statute.

*Reversed and remanded with directions.*